UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────

ROBBIN EGAN,

        Petitioner,

      -v-                              04-CV-6544(MAT)
                                                **ORDER**

ELIOT SPITZER, Attorney General of the
State of New York,

        Respondent.

─────────────────────────────

## I.   Introduction

Petitioner Robbin Whitelaw, f/k/a Robbin Egan ("Whitelaw" or "petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging her conviction in Ontario County Court on July 30, 2002 on three counts of Grand Larceny in the Fourth Degree (N.Y. Penal Law § 155.30[1] and [4]) and one count of Petit Larceny (N.Y. Penal Law § 155.25).[1] Her trial took place before the Honorable Craig J. Doran, Ontario County Judge.

## II.  Factual Background and Procedural History

This conviction stems from an incident that occurred on October 6, 2001 at a shopping mall in Victor, New York. Penny Ciaburri ("Ciaburri") had a late morning appointment for a manicure at the Nail Studio located in the Eastview Mall. V.T. 5, 6, 27.[2]

---

[1] This matter has been re-assigned to the undersigned.

[2] Citations to "V.T.__" refer to the transcript of the victim's testimony. Pursuant to New York Crim. Proc. Law Article 660, the testimony of Ciaburri was taken prior to trial.

1

After Ciaburri signed in, she was called to the manicurist's station and placed her purse on the floor next to her feet. V.T. 9, 10. Ciaburri testified that when she left her seat to wash her hands, she left her purse at the manicurist's station. V.T. 10. When Ciaburri returned, her purse was gone. V.T. 11. According to Ciaburri, the purse contained a cell phone, a Palm Pilot, credit cards, over $1,200.00 in cash, and other items. V.T. 19-20.

Traci Sharp ("Sharp"), testified that on October 6, 2001, she went to the Nail Studio at the Eastview Mall. T. 170.[3] Sharp arrived at approximately 12:00 p.m. and signed a check-in sheet. T. 171. According to Sharp, the petitioner picked up the purse near the nail station left there by Ciaburri. T. 176-177. When Ciaburri returned, she noticed her purse was missing. Sharp told Ciaburri that a woman had just walked out with it. T. 180. Sharp and Ciaburri then entered the mall in an unsuccessful attempt to locate the petitioner and the purse. T. 202.

On October 9, 2001, Ontario County Sheriff's Department Investigator James Minute ("Minute") and Deputy Jackie Callard ("Callard") met Whitelaw at her place of employment and requested permission to search her apartment. T. 218-219. Minute obtained the petitioner's oral and written consent to search the apartment. T. 220, 221. During the search, Minute observed Callard recover a cellular phone from a desk drawer. T. 223. When the phone was

---

[3] Citations to "T.__" refer to the trial transcript.

powered on, the name of Penny Ciaburri appeared on the screen. T. 224. When asked about the phone after it was recovered, Whitelaw told the police officers that it was her son's phone and that he was in the navy. T. 224.

A pre-trial hearing was conducted on July 9 and 10, 2002 to determine whether the seized cell phone and Sharp's out-of-court identification of the petitioner should be suppressed.[4] The petitioner's motions to suppress were denied in their entirety. People v. Egan, No. 02-01-032, Decision and Order 7/19/2002. A three-day jury trial was held in Ontario County Court. Jay Ensworth ("Ensworth"), an acquaintance of the petitioner, testified for the defense. Ensworth told the court that he had received an e-mail from Whitelaw sometime early in October, 2001. T. 275. Defense counsel attempted to establish the contents of the e-mail and the prosecution objected to its admission as hearsay. T. 276. An offer of proof was made that the e-mail, purportedly sent on October 8 or 9, 2001, would state that the petitioner needed to reach her son in the navy because she had found his cell phone. T. 276. Following further argument of this issue, the court sustained the prosecution's objection that the e-mail was hearsay. T. 278-279.

---

[4] By the consent of counsel, this hearing also dealt with suppression issues raised by Whitelaw in an unrelated indictment against her. Under that indictment, the petitioner had pleaded guilty to Issuing a Bad Check. See People v. Egan, 6 A.D.3d 1206 (4th Dept. 2004). This unrelated indictment and the subsequent conviction of the petitioner is the subject of a separate petition for a writ of habeas corpus. See Whitelaw v. Sptizer, W.D.N.Y., 04-CV-6570.

The petitioner testified in her own defense. Whitelaw testified that she was at the Nail Studio at Eastview Mall on October 6, 2001, and that she had arrived at noon, signing in upon arrival. T. 280-283. She stated that she paid by credit card at 12:53p.m. and left immediately thereafter with her purse. T. 284. She denied taking any one else's purse with her. T. 283. On cross-examination, the petitioner stated that her son had been at sea for over thirty days prior to the date the police found the cell phone in her apartment, and had never lived in the apartment with Whitelaw prior to her arrest. T. 295-296. When asked if she could explain how Ciaburri's phone was found in her apartment, Whitelaw testified that her purse fell open at the Eastview Mall, and that the phone must have been on the ground among the items that petitioner put back in her purse. When called upon to explain why she would have thought the cell phone belonged to her son, the petitioner said she believed that while moving her son's belongings from her prior residence to her new apartment, she stopped fast and the phone "flew forward" out of a box and into her purse. T. 298.

Following summations and the court's charge, the jury deliberated and found Whitelaw guilty of all charges in the indictment. T. 369. On July 30, 2002, the petitioner was sentenced to a term of imprisonment of six months, to be followed by five years probation, plus restitution. S. 19-21.[5] Whitelaw filed an

---

[5] Citations to "S.__" refer to the sentencing transcript.

appeal with the Appellate Division, Fourth Department, which affirmed her conviction. <u>People v. Egan</u>, 6 A.D.3d 1203 (4th Dept. 2004); <u>lv denied</u> 3 N.Y.3d 369 (2004). Whitelaw did not file any applications for post-conviction relief in state court before she filed this petition for a federal writ of habeas corpus (Dkt. #1).[6]

Whitelaw presents a myriad of claims for habeas relief, including: 1) that her conviction was obtained through the use of perjured testimony; 2) she was denied her right to confront witnesses; 3) the exclusion of defense witness testimony deprived her of a fair trial; 4) the prosecution failed to establish a chain-of-custody with respect to the cellular phone; 5) unconstitutional search and seizure; 6) the pre-plea sentencing investigation ("PPI") violated her due process; 7) a speedy trial violation, and several general arguments alleging a denial of liberty, due process, and fair trial.

For the reasons set forth below, the Court finds that the petition does not warrant issuance of the writ.

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a state court conviction "resulted in a decision

---

[6] The petitioner filed a motion to set aside the jury's verdict pursuant to N.Y. Crim. Proc. Law § 330.30(1).

that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently. Aparicio v.

<u>Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner,</u> 337 F.3d 175, 181 (2d Cir.) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.   The Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C.

§ 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

In Rose v. Lundy, 455 U.S. 509 (1982), the Supreme Court adopted a "total exhaustion" rule for habeas petitions by holding that a "mixed petition"-that is, one containing both exhausted and unexhausted claims-should be dismissed as a whole, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." 455 U.S. at 510. However, in 1996, AEDPA modified this "exhaustion rule", amending the habeas statute to provide as follows: "An application for a writ of habeas corpus may be *denied* on the merits, notwithstanding the failure of the applicant to exhaust the remedies available to the courts of the State." 28 U.S.C. § 2254(b)(2) (emphasis supplied). In other words, a petitioner's failure to exhaust state court remedies does not prevent a district court from reaching the merits of the habeas petition if *all* the petition's claims, both exhausted and unexhausted, will be denied.

The Second Circuit has not yet articulated a standard for determining when unexhausted claims should be denied on the merits, but the majority of district court decisions in this Circuit have embraced a "patently frivolous" test for dismissing unexhausted claims. Naranjo v. Filion, No. 02Civ.5449WHPAJP, 2003 WL 1900867, at *8 (S.D.N.Y. Apr. 16, 2003) (footnote omitted) (collecting cases). A minority of courts in this Circuit have expressed the test as whether " 'it is perfectly clear that the [petitioner] does not raise even a colorable federal claim,' in which case the Court should dismiss the unexhausted claim on the merits (or rather the clear lack thereof)." Id. (quoting Hernandez v. Lord, No. 00 Civ. 2306(AJP), 2000 WL 1010975, at *4-5 & n.8 (S.D.N.Y. July 21, 2000)) (Report and Recommendation)(internal quotations omitted) (analyzing the diverging views without deciding which standard is appropriate, and collecting cases)).

Although some of the claims have not been fully exhausted, however, review of the merits of all claims is appropriate in this case under § 2254(b)(2).

## IV. Analysis of the Merits

### A. Use of Perjured Testimony at Trial

The title of Whitelaw's first argument in her habeas petition is, "[B]ecause petitioner is innocent of the crime for which she was convicted, her conviction was unconstitutional and violates the petitioner's Federal and State Constitutional rights to due process

and a fundamentally fair trial". Pet. ¶ 12(A). The body of her argument, however, appears only to allege that one of the eyewitnesses, Traci Sharp, committed perjury, thereby rendering Whitelaw's conviction unconstitutional. Specifically, petitioner claims that Traci Sharp (the witness who identified Whitelaw as the person who picked up Ciaburri's purse at the nail salon), committed perjury based on the fact that Sharp positively identified the petitioner at trial, but, when shown a photograph of the petitioner at the pre-trial identification procedure, indicated that the photograph only "resembled" Whitelaw. T. 201.

This argument was addressed in Whitelaw's *pro se* supplemental brief on direct appeal, but was not raised as a federal constitutional claim. It is therefore unexhausted. Nonetheless, the petitioner's claim is both patently frivolous and without merit.

The Supreme Court analyzes claims for wrongful conviction based on perjured testimony under the Due Process Clause of the Fourteenth Amendment. <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959). Under this standard, the Supreme Court directs that a conviction must be set aside if (1) the prosecution actually knew of the false testimony, and (2) there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. <u>Drake v. Portuondo</u>, 553 F.3d 230, 241 (2d Cir. 2009).

Whitelaw's claim is deficient for several reasons. First, Sharp's testimony regarding the identification of the petitioner is not necessarily inconsistent. The fact that Sharp did not definitively identify Whitelaw based upon a review of a photo array, does not render her in-court identification invalid. Assuming, *arguendo*, that such testimony is inconsistent, there is simply no basis upon which a finding of perjury could be made based on the record in this case. See <u>United States v. Monteleone</u>, 257 F.3d 210 (2d Cir. 2001), <u>cert. denied</u>, 535 U.S. 1042 (2002) (simple inaccuracies in testimony do not constitute perjury). Contrary to the petitioner's contention, the trial court did not prohibit defense counsel from inquiring into the allegedly inconsistent statements. T. 196-201.

Since Whitelaw has failed to demonstrate an underlying constitutional violation occurring at trial, let alone the existence of actual perjury, the petitioner's claim that her conviction was based on false testimony is denied.


**B.    Confrontation Clause Violation; Missing Witness Jury Charge**

In "Ground two" of the petition, Whitelaw claims she was denied her right to confront and cross-examine adverse witnesses, namely, arresting officers Callard and Falkey. See <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) (out-of-court statements by witnesses that are testimonial in nature are barred under the

Confrontation Clause, unless the witnesses are unavailable and defendants had prior opportunity for cross-examination). Since these individuals were never called as witnesses at trial and their prior testimony was never introduced, Crawford does not apply and the petitioner was not deprived of her Sixth Amendment right to confront and cross-examine the police officers.

Whitelaw further claims the prosecution did not call Callard and Falkey as witnesses in its case, purportedly because they "had given untruthful testimony at the Pre-trial hearing". Pet. ¶ 12(B). The failure of the prosecution to call the two officers, Whitelaw contends, required the trial court to give a missing witness charge to the jury. Again, this issue was not brought before the state court on direct appeal and is unexhausted. In any event, it is well-settled that the propriety of a state trial court's jury instruction is ordinarily a matter of state law that does not raise a federal constitutional question. See Cupp v. Naughten, 414 U.S.141, 146 (1973); United States ex rel. Smith v. Montayne, 505 F.2d 1355 1359 (2d Cir. 1974), cert. denied, 423 U.S. 856 (1975). Moreover, even if a jury instruction is improper under state law, federal habeas relief is unavailable unless the instruction also violated the petitioner's rights secured by the constitution, laws, or treaties of the United States. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). With specific reference to missing witness charges, the federal courts have cautioned that a

failure to give a missing witness charge "rarely warrants reversal even on direct appeal." <u>Kloisin v. Conway</u>, 501 F. Supp.2d 429, 444 (W.D.N.Y. 2007) (citing <u>United States v. Adeniji</u>, 31 F.3d 58, 65 (2d. Cir.1994); <u>United States v. Torres</u>, 845 F.2d 1165, 1170-71 (2d. Cir.1988)).

Here, the petitioner has failed to demonstrate her entitlement to a missing witness charge. As a matter of both state and federal evidentiary law, the rule is established that "a party's failure to call a witness may permissibly support an inference that the witness's testimony would have been adverse." <u>Revson v. Cinque & Cinque, PC.</u>, 221 F.3d 71, 82 (2d Cir. 2000) (<u>citing</u> <u>Graves v. United States</u>, 150 U.S. 118, 121 (1983)). The New York Court of Appeals has set forth a framework for determining when a party is entitled, as a matter of law, to such a missing witness jury charge. It must be shown that, "the uncalled witness is knowledgeable about a material issue upon which evidence is already in the case; that the witness would naturally be expected to provide noncumulative testimony favorable to the party who has not called him, and that the witness is available to such party." <u>People v. Gonzales</u>, 68 N.Y.2d 424, 427 (1986).

Whitelaw does not specify what material and noncumulative testimony she believes would have been elicited from these officers had the prosecution called them as witnesses and therefore fails to establish that she was entitled to such a charge as a matter of

law.  She also provides no reason why the absence of the charge deprived her of a fundamentally fair trial.  This claim is therefore denied.

### C.  Improperly Excluded Testimony

The title of this claim in petitioner's habeas petition states that she was "denied her Sixth Amendment right to the compulsory process for obtaining witnesses." Pet. ¶ 12(C). However, a reading of this portion of the petition clearly reveals that the gravamen of Whitelaw's argument is that the trial court erred when it made a particular evidentiary ruling.  Specifically, the petitioner contends that the trial court erred when it sustained the prosecution's objection to the defense's attempt to introduce testimony from Jay Ensworth that Whitelaw had sent him an e-mail on October 8 or October 9, 2001, to the effect that she needed to reach her son because she had found his cell phone.

In general, a state's evidentiary ruling, even if erroneous under state law, does not present constitutional issues cognizable in a habeas corpus petition.  See Crane v. Kentucky, 476 U.S. 683, 689 (1986).  Even if there is error in the preclusion of evidence, habeas corpus relief is only available when the error deprives the petitioner of a fundamentally fair trial. Rosario v. Kuhlmann, 839 F.2d 918, 924 (2d Cir. 1988).  It is the materiality of the excluded evidence to the presentation of a defense that determines

whether a petitioner has been deprived of a fundamentally fair trial. <u>Taylor v. Curry</u>, 708 F.2d 886, 891 (1983) ("*if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.*") (emphasis in original).

The exclusion of the e-mail testimony in the petitioner's case does not rise to this level. First, the evidence strongly supports the jury's conclusion that Whitelaw took Ciaburri's purse and the cell phone contained therein. Whitelaw acknowledged that she was in the nail studio on the date and time of the theft, and was positively identified by an eyewitness (Sharp). Ciaburri's cell phone was found in the petitioner's possession. Her explanation as to how she came into possession of the phone was clearly dismissed as lacking credibility by the jury. T. 298. Finally, had the proffered testimony been permitted, it simply would have enabled the prosecution to argue that the petitioner, suspecting that she may have been seen taking the purse, attempted to exculpate herself by creating a self-serving document (to demonstrate her allegedly innocent state of mind). Based upon the foregoing, the Court finds that the petitioner was not denied a fundamentally fair trial, nor was the outcome of the case materially affected by the exclusion of the testimony of one of the defense's witnesses. This claim is without merit and therefore denied.


**D. Chain-of-Custody**

Petitioner's fourth argument is that the trial court erred in allowing the victim's stolen cell phone, which was found in the petitioner's apartment, to be introduced as evidence. Pet. ¶ 12(D). According to Whitelaw, there was an inadequate foundation for the introduction of the cell phone because Officer Callard, who found the phone in Whitelaw's apartment and identified it at the time by its serial number, did not testify at trial to establish the serial number of the cell phone sought to be introduced.

Whitelaw's chain of custody argument presents a question of state evidentiary law that generally is not amenable to habeas review. See Estelle, 502 U.S. at 67-68. Under New York law, a "failure to establish a chain of custody may be excused 'where the circumstances provide reasonable assurances of the identity and unchanged condition' of the evidence." People v. Julian, 41 N.Y.2d 340, 392 (1977) (quoting Amaro v. City of New York, 40 N.Y.2d 30 (1976)). Furthermore, both federal and state law clearly hold that a defect in the chain of custody goes to the weight of the evidence, not its admissibility. Cassells v. Ricks, No. 99-CV-11616(AJP), 2000 WL 1010977, at *7 (S.D.N.Y. July 21, 2000) (citing, e.g., United States v. Hon, 904 F.2d 803, 810 (2d Cir. 1990) ("Once the exhibits were admitted into evidence, the alleged defects in the government's chain of custody proof were for the jury to evaluate in its consideration of the weight to be given to the evidence.").

Even if the petitioner's claim were cognizable on habeas review, it is without merit.  During her testimony, Ciaburri was shown the recovered cell phone by the prosecutor and positively identified it as hers. T. 21-22. In addition, Ciaburri testified that the phone was programmed so that her name appeared on it when it was powered on. T. 21. Investigator Minute identified the phone which had been marked for identification as being the same phone which he observed Officer Callard retrieve from the petitioner's desk drawer.  T. 223. Finally, the phone displayed Ciaburri's name when it was turned on. T. 224. This Court finds that a reasonable jury could have concluded that the prosecution established a complete chain of custody for the cell phone.  Therefore, this claim provides no basis for habeas relief.

### E.    Illegal Search and Seizure

The petitioner's next assertion of error is that the search of her apartment by members of the Ontario County Sheriff's Department was done without her consent or a warrant and was, consequently, illegal.  Because the cell phone was found in her apartment during that purportedly illegal search, Whitelaw contends that it should have been suppressed.  The respondent asserts that this argument cannot be sustained for habeas review, and the Court agrees.

In Stone v. Powell, 428 U.S. 465 (1976), respondent argued that physical evidence used in his trial was the product of an

illegal arrest. The Supreme Court held that federal courts could not, on a state prisoner's petition for a writ of habeas corpus, consider a claim that evidence obtained in violation of the Fourth Amendment should have been excluded at his trial, when the prisoner has had an opportunity for full and fair litigation of that claim in the state courts. Stone, 428 U.S. at 494; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992). Stone requires only that "the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (emphasis added). Under this standard, there are only two instances in which a Fourth Amendment claim will be reviewed by a federal habeas court: (1) where the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) where the state has provided a corrective mechanism, but the defendant was unable to use it because of an "unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (citing Gates, 568 F.2d at 840).

Stone clearly controls here and precludes habeas review because the petitioner's claim is rooted in a Fourth Amendment violation (the allegedly illegal search of the apartment). Whitelaw requested, and was granted, a two-day pre-trial suppression hearing on the issue of the legality of the search. See Motions Tr. 7/9/02, 7/10/02. Nowhere in her habeas corpus petition

does Whitelaw allege that she was denied a full and fair opportunity to litigate these issues, or that there was some unconscionable breakdown in the suppression proceedings.

Consequently, pursuant to Stone v. Powell, this Court is precluded from reviewing the petitioner's Fourth Amendment challenge to the search of her apartment and the subsequent seizure of evidence.

## F.    The Pre-plea Report

Petitioner asserts that a pre-plea investigation report which was ordered by the Ontario County Court, "is in violation of the petitioner's right to due process and contrary to Federal and State law." Pet. ¶ 12(F) (Dkt. #1).[7]  Whitelaw contends that the policy of Ontario County in administering pre-plea investigation reports is a "blatant circumvention of the law and the intent of the legislation." Pet. ¶ 12(F).  She does not state how the policy is in violation of New York State law.  Although petitioner claims that the procedure is "unconstitutional", she cites no statutory or decisional  authority, and does not set forth any grounds for a due process violation.  Whitelaw raised this issue on direct appeal to the Appellate Division, Fourth Department, which concluded that it lacked merit.  People v. Egan, 6 A.D.3d 1203 (4th Dept. 2004).

---

[7] N.Y. Crim. Proc. Law § 390.20 sets forth the requirements for pre-sentence reports.  Although there is no statutory provision for a "pre-plea investigation", such investigations are commonly used in counties throughout New York and have been recognized by case law. See People v. Crosby, 108 Misc.2d 1 (N.Y. Sup. Ct., Bronx, 1976); People v. Johnson, 32 A.D.3d 556 (3rd Dept. 2006).

The petitioner has failed to articulate how the pre-plea investigation report had any influence on her conviction at trial. As such, the Court finds that the Appellate Division's decision was not contrary to, or an unreasonable application of established Supreme Court precedent.

### G.    Speedy Trial

Finally, the petitioner claims that her right to a speedy trial was denied because the prosecution allegedly did not announce their readiness for trial within 180 days.  Whitelaw's direct appeal raised a state statutory speedy trial claim pursuant to C.P.L. § 30.30.  The Appellate Division rejected the petitioner's § 30.30 argument, finding that the People's written notice of readiness was provided to defense counsel within the statutory time period, and the fact that the prosecutor provided the notice to the court and not the court clerk does not mandate reversal. People v. Egan, 6 A.D.3d at 1203.  Insofar as she raises a federal constitutional speedy trial claim, it is without merit.

In Barker v. Wingo, 407 U.S. 529, 523 (1972), the Supreme Court adopted a balancing test to guide a court's determination whether a criminal defendant was denied his right to a speedy trial.  The four factors to be considered are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant

caused by the delay. None of these factors is dispositive and courts must engage in a "sensitive" balancing process" whereby the conduct of both the prosecution and the defense is weighed. <u>Rayborn v. Scully</u>, 858 F.2d 84, 89 (2d Cir. 1988). Notably, neither in her habeas petition or state court appeal does Whitelaw allege that she suffered any prejudice as a result of the "delay" she claims. The record does not indicate that the District Attorney delayed the prosecution of this case, and all adjournments were either at the request of Whitelaw (through counsel) or done with her consent. <u>See</u> State Ct. Records, No. 02-01-032. With the exception of sixteen days, the petitioner was out of custody from the beginning of the case to its conclusion. Pet ¶ 12(G).

Based on a review of the record, the Court concludes that Whitelaw's speedy trial claim is meritless. The Appellate Division did not render a decision that was contrary to or an unreasonable application of <u>Barker v. Wingo</u>, and the petitioner's Sixth Amendment right to a speedy trial was not violated.

## V.   Conclusion

For the reasons stated above, Whitelaw's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Whitelaw has failed to make a substantial showing of a denial of a constitutional right, 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of

appealability. See, e.g. Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

     **SO ORDERED.**

                          S/Michael A. Telesca

                _____
                          MICHAEL A. TELESCA
                   United States District Judge

Dated:     July 16, 2009
            Rochester, New York